**Roger Dale MATHEWS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–00–00094–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Feb. 22, 2001.

Decided March 7, 2001.

Rick McPherson, Carthage, for appellant.

Danny Buck Davidson, District Attorney, Dana R. Whitmer, Assistant District Attorney, Carthage, for the State.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

Roger Mathews appeals from his conviction for capital murder.[1] A jury convicted

---

1. This case was transferred to Shelby County and tried there pursuant to Mathews' motion

him and set his punishment at life imprisonment. Mathews contends on appeal that the trial court committed reversible error by overruling his motion for mistrial, by allowing an expert witness to testify that he was sane at the time of the crime when there was no demonstrable scientific basis for his opinion, by admitting photographs and videotapes of the victims, and by refusing to grant a continuance to allow his father to testify. Mathews admitted that he killed the victims, and contends only that he was temporarily insane when he shot them.

Mathews, while with his parents at a house in Logan, Texas, walked to the home of a neighbor, Farrell Rutherford, and shot him. Mathews and Rutherford had been friends and "drinking companions" for many years. Mathews went back to his house and argued with his father, threatening both his father and his brother with a rifle and firing a shot between them. Mathews told his father that he had shot Rutherford and was going to kill Mark and Andy Gibbs. He took his father's car and went to the home of Tammy and Paul Cobble. Cobble was the brother of Mathews' sister-in-law. Mathews forced his way into the house, asked Paul Cobble if he was his brother, said he thought he was his brother, and then shot him twice. Mathews then drove to a neighbor's home, told a woman there he had shot the victims, and then asked her to write to him in prison. He then returned home, where he was later arrested.

At trial, Mathews did not contest the fact that he shot the victims, but relied on the defense of temporary insanity. He presented evidence from Paula Lundberg–Love, Ph.D., a professor of psychology, that he suffered from various mental diseases, including schizophrenia of the paranoid type with auditory hallucinations, and other defects that were probably the result of damage to the frontal lobes of his brain as a result of years of alcohol and substance abuse (since age ten) and from five or six instances of head trauma.[2] She also testified that he had a tested I.Q. of fifty-six and was at kindergarten level for reading.

■ Mathews first contends that the trial court erred by refusing his motion for mistrial. During the prosecutor's direct examination of Dr. Lake Littlejohn, in response to a question asking if Mathews' drug or alcohol abuse would cause brain damage, Littlejohn responded:

> Yes. I would have expected that. Even though he was in the penitentiary on two different occasions for a total of eight years and, therefore, probably abstinent, he still showed both physical and mental effects of long-standing alcohol abuse.

for change of venue. TEX.CODE CRIM.PROC.ANN. art. 31.08 (Vernon Supp.2001) provides that on a change of venue, after the trial is completed and the jury is discharged, the court, with the consent of counsel for the State and the defendant, may return the cause to the county where the indictment was returned. The statute further provides that an appeal of a cause returned to the county where the original indictment was returned must be docketed in the appellate district in which the county of original venue is located. This case was returned after trial to Panola County, the county where the indictment was filed, although the record does not contain a court order requiring that return. Neither party, however, complains of that omission, indicating that they consented to the return as provided by the statute. TEX.CODE CRIM.PROC.ANN. art. 31.08, §§ 1, 3.

2. The psychologist testified that Mathews had been in several car crashes that caused head injuries, that he had been shot once in the head but that the bullet had not penetrated his skull, that he had been beaten around the head, and that he had been hit in the head with a pool ball.

After this answer, defense counsel asked to approach the bench and in a bench conference moved for a mistrial because of Littlejohn's statement about Mathews serving time in the penitentiary. The trial court asked defense counsel if he wanted the court to instruct the jury to disregard the statement. Defense counsel said he did not want the court to give such an instruction because he did not want to emphasize the comment.

■■■ An instruction to disregard normally cures error, except in extreme cases where the evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the jurors' minds. *Livingston v. State*, 739 S.W.2d 311 (Tex.Crim.App. 1987); *Carter v. State*, 614 S.W.2d 821 (Tex.Crim.App. [Panel Op.] 1981). Thus, testimony referring to extraneous offenses allegedly committed by the defendant may be rendered harmless by the trial court's instruction to the jury to disregard the statement or comment. *Campos v. State*, 589 S.W.2d 424, 428 (Tex.Crim.App. [Panel Op.] 1979); *see, e.g., Williams v. State*, 643 S.W.2d 136, 138 (Tex.Crim.App. [Panel Op.] 1982); *Richardson v. State*, 624 S.W.2d 912, 913 (Tex.Crim.App. [Panel Op.] 1981). Improper evidence will seldom call for a mistrial, because in most cases any harm can be cured by an instruction to disregard. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex.Crim.App.1999). A mistrial is required only when the improper evidence or comment is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. *Id.* A trial court's denial of a mistrial is reviewed under an abuse of discretion standard. *Id.; State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex.Crim.App. 1993).

In this case, defense counsel made a tactical decision not to ask for an instruction because he was afraid it would bring the matter to the jury's attention rather than removing it from their memories. By making that decision, defense counsel lost the right to complain further unless the comment was so egregious that an instruction would have been inadequate to remove the harm.

We conclude that an instruction to the jury would have been adequate to cure any harm caused by Littlejohn's unresponsive comment. The matter was mentioned only briefly and casually. It was mentioned solely in the context of the defendant's abstinence from alcohol for this time period. It was not repeated or emphasized or even referred to at any other point in the trial, including jury argument. Furthermore, Mathews' only defense was temporary insanity, and we cannot perceive any egregious harm to an insanity defense from a passing reference to Mathews' prior incarceration, when his counsel had freely admitted to the jury that Mathews had killed the two victims and the evidence also showed that Mathews had a long history of aberrant behavior and drug and alcohol abuse. Indeed, in a subsequent portion of his testimony Littlejohn said, with regard to Mathews' past history, that Mathews' "[b]eing on the street and being in trouble with the police over and over again is certainly going to give you some experience." Mathews made no objection to this evidence and asked for no relief. We find that the trial court did not abuse its discretion in overruling Mathews' motion for a mistrial.

Mathews next contends that the court erred by allowing Dr. Edward Gripon to testify as an expert concerning Mathews' sanity at the time he shot the victims, because the State did not adequately show that the methods Gripon used were valid

according to the guidelines set out in *Kelly v. State*, 824 S.W.2d 568 (Tex.Crim.App. 1992).

The Court of Criminal Appeals stated in *Kelly* that the requirements of TEX.R.CRIM.EVID. 702 (now TEX.R.EVID. 702) do not apply specifically or exclusively to novel or unconventional scientific evidence. The court stated that in assessing admissibility under Rule 702, the court is to determine whether the scientific evidence is sufficiently reliable and relevant to assist the jury in reaching a correct result. To be considered reliable, evidence based on a scientific theory must satisfy three criteria: (1) the underlying scientific theory must be valid, (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Kelly v. State*, 824 S.W.2d at 574.[3] In *Kelly*, the court also set out a list of nonexclusive factors that could affect a trial court's determination of reliability.

The Court of Criminal Appeals expressly applied these factors to psychological/psychiatric testimony regarding future dangerousness. *See Nenno v. State*, 970 S.W.2d 549, 560–62 (Tex.Crim.App.1998), *overruled on other grounds, State v. Terrazas*, 4 S.W.3d 720 (Tex.Crim.App.1999). In *Nenno*, the court addressed the application of *Kelly* to areas such as psychology and the assessment of future dangerousness, stating:

When addressing fields of study aside from the hard sciences, such as the social sciences or fields that are based primarily upon experience and training as opposed to the scientific method, ... [t]he appropriate questions are: (1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field. These questions are merely an appropriately tailored translation of the *Kelly* test to areas outside of hard science. And, hard science methods of validation, such as assessing the potential rate of error or subjecting a theory to peer review, may ofteñ be inappropriate for testing the reliability of fields of expertise outside the hard sciences.

*Nenno v. State*, 970 S.W.2d at 562; *Green v. State*, No. 12–99–00152–CR, 2000 WL 1706855, at *4 (Tex.App.—Tyler Nov.15, 2000, no pet. h.).

Gripon was questioned outside the presence of the jury. He testified about the field of psychiatry and the ways in which various tools and tests have been formulated to assist psychiatrists in evàluating patients. He also emphasized that face-to-face interviewing is critical in making a determination about sanity, because the determination is made not as a result of a single particular test but as the result of a combination of factors that vary with each individual. He emphasized that it is a judgment call, and then set out his experience and qualifications to make such a judgment. Mathews then reurged his objection that the scientific validity of Gripon's methodology had not been adequately demonstrated.

We find that the trial court properly admitted Gripon's testimony. As set out by the court in *Nenno*, many of the statistical tools used in hard sciences are unavailable in soft sciences such as psychiatry, which by their nature rely heavily on individual analyses of human personality and actions.

---

**3.** *See also Hartman v. State*, 946 S.W.2d 60, 63 (Tex.Crim.App.1997); *Jordan v. State*, 928 S.W.2d 550, 555 (Tex.Crim.App.1996).

Dr. Gripon's testimony shows the principles used in the field, as well as his background and expertise in the area. This is sufficient to support the admissibility of his testimony.

█ Mathews next contends that the trial court erred by allowing the State to introduce color photographs of the body of Farrell Rutherford as he was found at the scene, autopsy photographs of his wounds, and similar photographs of the other victim, Paul Cobble, as well as a videotape taken at both murder scenes. Defense counsel objected on the basis that the probative value of these exhibits was outweighed by their prejudicial effect. Mathews argues on appeal that because he had admitted from the outset that he had shot and killed the victims, and since the only issue was temporary insanity, the photographs served no purpose but to inflame the jury.

█ Although Mathews did not dispute that he shot and killed the victims, he pleaded not guilty, thus requiring the State to prove each element of the crime. The admissibility of photographs is within the sound discretion of the trial court. *Jones v. State*, 982 S.W.2d 386, 394 (Tex. Crim.App.1998); *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex.Crim.App.1995). The court abuses its discretion only when the probative value of the photographs is small and the inflammatory potential is great. In determining whether certain photographs are admissible under Tex. R.Evid. 403, several factors should be considered: the number of exhibits offered, their gruesomeness, their detail, their size, whether they are black-and-white or color, whether they are close-up, whether the body is naked or clothed, the availability of other means of proof, and the circumstances of each case. Tex.R.Evid. 403; *Emery v. State*, 881 S.W.2d 702, 710 (Tex. Crim.App.1994). Photographs showing a victim's wounds may be admitted to clarify and support observations and conclusions about the victim's injuries and to reveal the cause of death as alleged in the indictment, so long as they are not admitted solely to inflame the minds of jurors. *See Madden v. State*, 799 S.W.2d 683, 696–97 (Tex.Crim.App.1990). Photographs are generally admissible where verbal testimony about the same matters would be admissible. *Emery v. State*, 881 S.W.2d at 710.

█ The same analysis is applied in determining the admissibility of videotapes. Under Rule 403, the trial court's analysis of the admissibility of a silent videotape is the same as it is for still photographs. *Alvarado v. State*, 912 S.W.2d 199, 213 (Tex.Crim.App.1995); *Gordon v. State*, 784 S.W.2d 410, 411–12 (Tex.Crim.App.1990). And, as in the admissibility of still photographs, the trial court's decision will not be disturbed on appeal absent an abuse of discretion. *Alvarado v. State*, 912 S.W.2d at 213.

Tex.R.Evid. 403 provides that, although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Once a defendant objects to photographic evidence on the basis of Rule 403, the trial court must weigh the probative value against the potential for unfair prejudice. *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Crim.App.1992).

█ The photographs and the videotape in question here depicted no more than the killing scenes and the injuries inflicted by Mathews on the two victims. Although a crime scene photograph may be gruesome, that fact alone will rarely render the photograph inadmissible under Rule 403. *Id.* at 430; *Long v. State*, 823 S.W.2d 259, 272 (Tex.Crim.App.1991).

The trial court must consider the "host of factors affecting probativeness ... and balance those factors against the tendency, if any, that the photographs have to encourage resolution of material issues on an inappropriate emotional basis." *Ladd v. State*, 3 S.W.3d at 568.

There is nothing about these depictions of the crime scenes that is of a nature to unfairly prejudice Mathews. They are nothing more than a reflection of the crime, and were used only to illustrate the nature of the wounds inflicted on the victims. Verbal descriptions of the fatal wounds would have been admissible, and so were the photographs and videotape. The trial court did not abuse its discretion by admitting these items.

■■■■ Mathews next contends that the court abused its discretion by overruling his oral motion for a continuance. He sought a continuance in order to obtain the testimony of his father, who was hospitalized at the time of trial. The trial court's ruling on a motion for continuance is reviewed under an abuse of discretion standard. *Heiselbetz v. State*, 906 S.W.2d 500, 511 (Tex.Crim.App.1995); *see* TEX.CODE CRIM.PROC.ANN. arts. 29.03, 29.06(6) (Vernon 1989). To establish an abuse of discretion, the defendant must show that he was actually prejudiced by the denial of his motion. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex.Crim.App.1996); *Heiselbetz v. State*, 906 S.W.2d at 511. Moreover, the general rule is that a motion for continuance must be in writing. No such motion was filed in this case; thus, the issue has not been preserved for appellate review.

*Matamoros v. State*, 901 S.W.2d 470, 478 (Tex.Crim.App.1995).[4]

■■■ Assuming that the claim is preserved for our review, the record reveals the following. Mathews' father, D.W. Mathews, had been attending the trial. Mathews' heart condition manifested itself during the trial, and he was hospitalized for emergency treatment. He had an angiogram and other tests that showed gallbladder problems that would require surgery. Defense counsel admitted that he had no idea about the length of D.W. Mathews' expected hospitalization or the immediate severity of his problems. Defense counsel stated to the court that D.W. Mathews was expected to testify that his son was acting in a bizarre fashion not similar to his previous drunken episodes, that he asked him strange questions, such as, "Are you a traveling man," pointed a rifle at him and threatened to kill him, and then fired the gun between him and his other son. He stated that D.W. Mathews would testify that in his opinion his son was temporarily insane, and he argued to the court that the testimony was important to his case. After confirming that defense counsel could not tell when the witness would be available, the trial court denied the motion for continuance.

The witness' testimony would have been favorable to the defendant. It would, however, have also been cumulative of other testimony. Mathews' son-in-law, James Welch, saw the confrontation between Mathews and his father and brother at close range. He testified he saw Mathews

---

4. *But see Deaton v. State*, 948 S.W.2d 371, 375–77 (Tex.App.—Beaumont 1997, no pet); *Petrick v. State*, 832 S.W.2d 767, 770–71 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (holding that an equitable oral motion for continuance may be made under certain circumstances). *Deaton* applies several factors to be considered in ruling on an oral motion for continuance: diligence in interviewing and procuring the witness' presence; probability of procuring the testimony within a reasonable time; specificity of his expected testimony; cumulative nature of his testimony; unexpected occurrence since trial began to keep the witness from appearing.

push his father, threaten him with the rifle, and demand his car keys, and that he was cursing his father and brother and threatening them during the entire confrontation.

Mathews' brother, Gary, echoed Welch's testimony, and also testified that Mathews said he had shot Rutherford and that he was going to kill Mark and Andy Gibbs for killing his brother Ronnie. Apparently the Gibbses had killed one of Mathews' brothers. However, instead of going to the Gibbses' house, Mathews went to the home of his sister-in-law's brother, Paul Cobble, and killed him. Gary Mathews also stated that he did not believe his brother had been drinking but that his behavior was bizarre and that he had never before seen him doing any of those sorts of things.

Mathews' mother, Lula Mae Mathews, testified that she was at the location and saw everything from only a few feet away. Her testimony is similar to that of Gary Mathews, except that she did not remember hearing Mathews curse his father. None of the witnesses was asked or testified about any "traveling man" statements.

Because multiple individuals observed the specific acts at issue, and three witnesses were available to testify about them, the trial court did not abuse its discretion by refusing to delay the trial for an unknown time to allow Mathews to obtain the testimony of a fourth individual about the same events.

For all the reasons stated, we affirm the judgment of the trial court.