In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00202-CR
______________________________


ADRIAN TOD DEARION, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 30675-B


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Adrian Tod Dearion was indicted for possession of one to four grams of cocaine and for
possession with intent to deliver cocaine. He was acquitted of the intent to deliver charge, but
convicted for possession of cocaine. The range of punishment was enhanced to twenty-five to
ninety-nine years by two prior felony convictions. See Tex. Pen. Code Ann. Â§ 12.42(d) (Vernon
Supp. 2004). At the punishment hearing, Dearion pled "true" to the enhancement allegations. The
jury assessed punishment at fifty years' confinement. The court ordered the sentence to be served
consecutively to another felony offense. Dearion's sole issue on appeal is that improper evidence
was admitted and the trial court erred by failing to grant a mistrial. We affirm the judgment of the
trial court. 
Â Â Â Â Â Â Â Â Â Â Â Â After the indictment was read, Dearion was asked to enter his plea and replied, "Sir, I plead
guilty to the possession part." The court refused to allow him to plead guilty to one paragraph and
not the other. Defense counsel stated, "He desires to enter a plea of not guilty to possession of intent
to deliver and guilty to possession." The court entered a plea of not guilty to the indictment.
Factual Background
Â Â Â Â Â Â Â Â Â Â Â Â Chris Clark, a patrolman for the City of Longview, Texas, Police Department, was dispatched
to the Econo Lodge in Longview on February 8, 2003, to investigate a report of suspicious activity
in room 221. Clark was informed that a person named Stoker had rented the room. During the direct
examination by the State, the following occurred: 
QWhat did you do after you found this out?
Â 
AWe were going to make contact to Room 221, but prior to doing so,
the caller who reported this gave us the name of a person that was occupying that
room and the name was Adrian Dearion, and we were informed by dispatch that this
Mr. Dearion had an outstanding parole violation warrant.
Â Â Â Â Â Â Â Â Â Â Â Â The trial court removed the jury and admonished the witness. Defense counsel moved for
a mistrial. The court deferred ruling on the motion and instructed the jury to "completely disregard
the last answer given by the witness in testifying. You will not consider that remark for any purpose
whatsoever." Later, the court overruled the motion for mistrial. 
Â Â Â Â Â Â Â Â Â Â Â Â Clark testified that, on approaching room 221, he made contact with the occupant, Dearion. 
The officers detected an odor of burning marihuana emitting from the room, and Dearion admitted
narcotics were in the room. A search of the room revealed some suspected crack cocaine, as well
as other illegal substances. As each illegal substance was found, Dearion claimed it was his. Other
officers testified as to the search and chain of custody of the evidence. A chemist testified one of
the substances found in Dearion's possession contained cocaine in the form of cocaine base. The
cocaine substance weighed 1.22 grams. 
Motion for Mistrial
Â Â Â Â Â Â Â Â Â Â Â Â Dearion alleges that the testimony concerning a "parole violation warrant" obviously referred
to a prior criminal conviction and that it was highly prejudicial and incurable by an instruction to
disregard. A denial of a mistrial is reviewed for an abuse of discretion. Ladd v. State, 3 S.W.3d 547,
567 (Tex. Crim. App. 1999). A trial court does not abuse its discretion when its decision is at least
within the zone of reasonable disagreement. See Montgomery v. State, 810 S.W.2d 372, 391 (Tex.
Crim. App. 1990) (op. on reh'g).
Â Â Â Â Â Â Â Â Â Â Â Â Â An accused is entitled to be tried on the accusation in the State's pleading and should not be
tried for some collateral crime or for being a criminal generally. Campos v. State, 589 S.W.2d 424,
427â28 (Tex. Crim. App. [Panel Op.] 1979) (citing Jones v. State, 568 S.W.2d 847 (Tex. Crim. App.
1978)).
Â Â Â Â Â Â Â Â Â Â Â Â In Campos, evidence was introduced as to the defendant's previous incarceration and an
instruction to disregard was given to the jury. The court held that a trial court's instruction to the jury
to disregard cured the improper admission of such evidence except in extreme cases where it
appeared the question or evidence was clearly calculated to inflame the minds of the jury and was
of such character as to suggest the impossibility of withdrawing the impression produced on their
minds. Campos, 589 S.W.2d at 428. 
Â Â Â Â Â Â Â Â Â Â Â Â In Mathews v. State, 40 S.W.3d 179 (Tex. App.âTexarkana 2001, pet. ref'd), this Court
addressed a situation in which an expert witness interjected that the defendant had been in the
penitentiary for eight years on two different occasions. Defense counsel moved for a mistrial, but
did not request an instruction for the jury to disregard the evidence. This Court held that such an
instruction to the jury would have been adequate to cure any harm caused by such testimony. Id. at
183. 
Â Â Â Â Â Â Â Â Â Â Â Â Improper evidence will seldom call for a mistrial because, in most cases, any harm can be
cured by an instruction to disregard. Id. (citing Ladd, 3 S.W.3d at 567). 
Â Â Â Â Â Â Â Â Â Â Â Â Dearion argues that this case is one of those extreme cases in which the improper testimony
is inflammatory and cannot be withdrawn from the minds of the jury. We disagree. Here, some of
the first words the jury heard at trial was Dearion attempting to plead guilty to the charge of
possession of cocaine. The jury convicted Dearion of possession of cocaine, but acquitted him of
possession with intent to deliver. It appears the jury was not inflamed toward Dearion, because he
was acquitted of the only charge for which he denied guilt. Counsel for Dearion announced to the
jury in his opening statement and in final argument that Dearion admitted guilt concerning the
possession charge, but denied guilt as to the intent to deliver charge. The jury reached the decision
Dearion sought. The impact of this evidence was also reduced because the jury had previously been
advised by defense counsel in his opening statement regarding Dearion that there was "a warrant for
his arrest."
Â Â Â Â Â Â Â Â Â Â Â Â The trial court promptly and clearly advised the jury to disregard the statement of the officer
for any purpose. We presume the jury followed this instruction and, based on the decision the jury
reached, it is logical and reasonable to conclude that the jury in fact followed the court's instruction
to disregard the evidence. The statement that a parole warrant existed likewise would not affect the
jury's consideration of punishment, because Dearion pled true to the enhancement paragraphs and
his prior convictions were properly in evidence for the jury's consideration. 
Conclusion
Â Â Â Â Â Â Â Â Â Â Â Â We find that the circumstances of this case do not show the evidence was calculated to
inflame the minds of the jury and was not so extreme that it could not be cured by a proper
instruction. The trial court's action in instructing the jury cured any error concerning the testimony. 
The trial court did not abuse its discretion in denying the motion for mistrial. 
Â Â Â Â Â Â Â Â Â Â Â Â We affirm the judgment of the trial court.
Â 


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Jack Carter
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â March 19, 2004
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â March 23, 2004

Do Not Publish



riority="73" SemiHidden="false"
 UnhideWhenUsed="false" Name="Colorful Grid Accent 5"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-09-00090-CR

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  KEITH ASHLEY HUBBARD,
Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  THE STATE OF TEXAS, Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the 5th Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Bowie County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial Court
No. 08F0792-005

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Memorandum Opinion by Justice Moseley








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MEMORANDUMÂ 
OPINION

Â 

Â Â Â Â Â Â Â Â Â Â Â  A
Bowie County jury found Keith Ashley Hubbard guilty of seven counts[1]
of aggravated sexual assault of Tabitha Fowl,[2] a
child. Â Hubbard was sentenced to fifty
yearsÂ imprisonment for each of the seven counts, the sentences to run
consecutively. Â During the trial on the
merits, the trial court prohibited Hubbard from cross-examining several
witnesses about whether the child had made accusations against others of sexual
assault. 

Â Â Â Â Â Â Â Â Â Â Â  On
appeal, Hubbard contends that the exclusion of evidence that the child had
lodged accusations against four other people (including two members of HubbardÂs
household) of having sexually assaulted her was harmful error. 

Â Â Â Â Â Â Â Â Â Â Â  We
affirm the judgment. 

Facts

Â Â Â Â Â Â Â Â Â Â Â  In
June 2007, then five-year-old Tabitha resided in the same residence with
Hubbard. Also living in the residence were Buffy Hubbard (HubbardÂs wife and
the aunt of Tabitha) and BuffyÂs three sons.Â 


Â Â Â Â Â Â Â Â Â Â Â  Bobby
Mixon, a Wake Village police officer, was called to the Hubbard residence to
investigate allegations of sexual assault on Tabitha.Â  Hubbard was prohibited from establishing by
the testimony of Mixon that the allegation was not that Hubbard had committed
an assault but, rather, that one of BuffyÂs juvenile sons had done so. Â 

Â Â Â Â Â Â Â Â Â Â Â  Karrah
Dickeson interviewed Tabitha at the ChildrenÂs Advocacy Center in Texarkana,
Texas. Â During that interview (and again
at trial), the child described the different ways that Hubbard sexually
assaulted her. Â Tabitha testified that Âwhite
stuffÂ came out of HubbardÂs Âwrong spot.Â Â However, Dickeson testified that Tabitha also
twice denied that Âwhite stuffÂ came out of HubbardÂs Âprivate.Â Â During the interview, but not at trial,
Tabitha identified one of BuffyÂs sons as the source of the Âwhite stuff.Â[3]Â  

Â Â Â Â Â Â Â Â Â Â Â  On
voir dire outside the presence of the jury, or upon in camera examination,
Mixon, Buffy, and Dickeson testified that the child had also made outcries of
sexual assault against BuffyÂs two juvenile sons. Â Specifically, Hubbard sought to rebut TabithaÂs
trial testimony that the Âwhite stuffÂ came from Hubbard by introducing
testimony that during her interview, Tabitha had identified one of BuffyÂs sons
as the source of the Âwhite stuff.Â 

Â Â Â Â Â Â Â Â Â Â Â  April
Graves (who identified herself as TabithaÂs adoptive mother) testified, in
camera, that Tabitha Âhas mentioned all three in different sexual acts against
her,Â referencing two of BuffyÂs sons by name and Hubbard by inference. Â In accord with Rule 412 of the Texas Rules of
Evidence, Hubbard made clear his intention to question several witnesses
(including Mixon, Dickeson, and Graves) regarding accusations of sexual assault
made by Tabitha against other persons, including BuffyÂs two juvenile sons;
Hubbard also wanted to bring out that Tabitha had identified someone other than
Hubbard as the source of the Âwhite stuff.Â Â After proper in camera hearings as well as
hearings and offers of proof outside the presence of the jury, the trial court
ruled that such evidence was inadmissible under Rules 403 and 412 of the Texas
Rules of Evidence. 

Standard of Review

Â Â Â Â Â Â Â Â Â Â Â  We
review a trial courtÂs decision to admit or exclude evidence for abuse of discretion.
Â Mozon
v. State, 991 S.W.2d 841, 846Â47 (Tex. Crim. App. 1999); Sherman v. State, 20 S.W.3d 96, 100
(Tex. App.ÂTexarkana 2000, no pet.). Â Such
an inquiry necessarily depends on the facts of each case. Â Sherman,
20 S.W.3d at 100. Â While an appellate
court may decide it would have ruled differently from the trial court on a
particular evidentiary issue, such disagreement does not inherently demonstrate
an abuse of discretion. Â Manning v. State, 114 S.W.3d 922, 926
(Tex. Crim. App. 2003). Â Instead, the
appellate court may only find an abuse of discretion when the trial courtÂs
decision Âis so clearly wrong as to fall outside the zone of reasonable
disagreement or when the trial court acts arbitrarily and unreasonably, without
reference to any guiding rules or principles.Â Â Reynolds
v. State, 227 S.W.3d 355, 371 (Tex. App.ÂTexarkana 2007, no pet.).

Analysis

Â Â Â Â Â Â Â Â Â Â Â  The
trial court prohibited several attempts by Hubbard to offer general evidence
the child had accused four other people of sexually assaulting her and, more
specifically, that the child previously identified someone other than Hubbard
as the source of the Âwhite stuff.Â Â Hubbard
argues that the exclusion of this evidence violated his rights to confrontation
by limiting his ability to cross-examine the witnesses against him, and was
improper because the probative value of the evidence outweighed any potential
prejudicial effect it may have created. 

Â Â Â Â Â Â Â Â Â Â Â  Rule 403

Â Â Â Â Â Â Â Â Â Â Â  As
part of his second point of error, Hubbard argues that the trial court erred in
excluding the evidence because the probative value of the evidence outweighed
the danger of unfair prejudice. 

Â Â Â Â Â Â Â Â Â Â Â  Generally,
our rules favor admission of all relevant evidence, and we presume relevant
evidence to be more probative than prejudicial. Â See,
e.g., Tex. R. Evid. 402; Fletcher v. State, 852 S.W.2d 271, 277
(Tex. App.ÂÂDallas 1993, pet. refÂd). Â Most
relevant evidence offered by one party will be prejudicial to the opposing
party. Â Id. Â The trial court can
exclude relevant evidence if its unfair prejudice substantially outweighs its
probative value. Â Tex. R. Evid. 403; Montgomery
v. State, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on rehÂg); Fletcher, 852 S.W.2d at 277. Â ÂÂUnfair prejudiceÂ . . .Â  refers to an Âundue tendency to suggest
decision on an improper basis, commonly, though not necessarily, an emotional
one.ÂÂ Â Cohn v. State, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993). Â Under Rule 403, the trial court may also
exclude relevant evidence that would confuse the issues, mislead the jury,
cause undue delay, or needlessly present cumulative evidence.

Â Â Â Â Â Â Â Â Â Â Â  In
determining whether the potential prejudice of evidence outweighs its probative
value, we consider: Â (1) how compellingly
the evidence makes a consequential fact more or less probable, (2) the evidenceÂs
potential to impress the jury in an irrational way, (3) the time needed to
develop the evidence, and (4) whether other evidence is available to prove the
consequential fact at issue. Â Mozon, 991 S.W.2d at 847. 

Â Â Â Â Â Â Â Â Â Â Â  The
first factor mentioned in Mozon (how
compelling the evidence makes a consequential fact more or less likely) and the
fourth factor (whether other evidence is available to prove the consequential
fact at issue) weigh heavily in favor of excluding the evidence. Â ÂThere is no purely legal test to determine
whether evidence will tend to prove or disprove a propositionÂit is a test of
logic and common sense.Â Â Miller v. State, 36 S.W.3d 503, 507
(Tex. Crim. App. 2001). Â The key here is
the Âconsequential factÂ element of both factors. Â Accusations against third parties, even other
members of TabithaÂs family or household, of different and separate sexual
assaults are inconsequential and not probative of the accusations against
Hubbard. Â That the child testified that
she saw Âwhite stuffÂ come out of one of BuffyÂs sons is likewise not probative
of whether she saw Âwhite stuffÂ come from Hubbard and there is no evidence
that the two instances are the same event.Â 


Â Â Â Â Â Â Â Â Â Â Â  The
second factor (the potential of the evidence to impress the jury in an
irrational way) weighs in favor of exclusion. Â All evidence prejudices one party or the
other. Â However, evidence that the child
has accused others of separate sexual assaults is, at best, of questionable
relevance to the question of whether Hubbard assaulted the child and it could
easily have the effect of confusing or misleading the jury.Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â  Very
little time would be needed to develop the evidence; therefore, the third factor
weighs in favor of admission.

Â Â Â Â Â Â Â Â Â Â Â  In
support of his appeal, Hubbard relies primarily on the case of Kesterson v. State, where the defendant
was accused of sexually assaulting his five-year-old stepdaughter. Â 997 S.W.2d 290, 292 (Tex. App.ÂÂDallas 1999, no
pet.). Â During the childÂs interview with
the StateÂs psychologist, she accused a different male relative of the very
assault with which the defendant was charged, but, at trial, the child
testified that the other relative never touched her. Â The other male relative had access to the
child and disappeared before trial. Â The
defendant sought to introduce the childÂs statement through cross-examination
of the psychologist.[4]
Â The State argued that Rule 412 excluded
any references to any other sexual abuse and the trial court excluded the
evidence, relying on both Rule 412 and Rule 403.

Â Â Â Â Â Â Â Â Â Â Â  In
Kesterson, the court of appeals held
that the evidence was admissible under Rule 403, noting that the childÂs
testimony of the events varied depending on who was questioning her, that the
child had a low IQ and suffered from attention deficit disorder, that several
witnesses testified to the childÂs reputation for telling false stories, and
that the defendantÂs defensive theory directly related to the excluded
evidence. Â Id. at 294Â95. Â The court
also held the evidence admissible under Rule 412, finding that the evidence was
probative of the defendantÂs theory and that Âno rational jury would conclude a
five year old child was promiscuous or consented, in any way, to sexual assault.Â[5]
Â Id.
at 295. Â Finding the erroneous exclusion
harmful to the defendant, the court of appeals reversed the trial court and
remanded the matter for a new trial. Â Id. at 295Â96.

Â Â Â Â Â Â Â Â Â Â Â  The
distinguishing facts of Kesterson are
absent in the present case. Â In Kesterson, the child had accused two
different men of the same assault. Â Here,
the child accused three different males of separate and distinct assaults on
her that occurred at different times; on appeal, Hubbard does not dispute that
other and separate offenses of a like nature were committed by others against
the child. Â Therefore, we find Kesterson distinguishable.

Â Â Â Â Â Â Â Â Â Â Â  Introducing
the evidence of other alleged assaults risked misleading the jury or confusing
the issues. Â For the foregoing reasons,
we find that the probative value of the excluded evidence was substantially
outweighed by the danger of unfair prejudice. Â We overrule HubbardÂs point of error
pertaining to the applicability of Rule 403 in the exclusion of evidence.

Â Â Â Â Â Â Â Â Â Â Â  Rule 412 and
Confrontation Clause Issues

Â Â Â Â Â Â Â Â Â Â Â  Hubbard
raises the question of whether the trial court could have excluded the complainantÂs
statement under the balancing test within Rule 412.[6] Â Rule 412, the Ârape shield law,Â governs the
admissibility of a complainantÂs previous sexual conduct in a sexual assault
prosecution. Â Tex. R. Evid. 412; see
Wofford v. State, 903 S.W.2d 796, 798 (Tex. App.ÂÂDallas 1995, pet. refÂd).
Â It protects a complainantÂs previous
sexual conduct from exposure, except in limited circumstances. Â Tex. R.
Evid. 412; see Wofford, 903
S.W.2d at 798.[7]
Â The rule includes an exception for
testimony Âconstitutionally required to be admitted.Â Â Tex. R.
Evid. 412(b)(2)(E). Â As with the
pertinent test examined above as it relates to Rule 403, to be admitted into
evidence through one of Rule 412Âs exceptions, the probative value of the
evidence must still outweigh its prejudicial effect.[8] 

Â Â Â Â Â Â Â Â Â Â Â  Hubbard
argues that the excluded evidence is Âconstitutionally required to be admittedÂ
under the Confrontation Clause of the United States Constitution and that the
probative value outweighs the evidenceÂs prejudicial effect. Â Applying the same analysis we applied to the
courtÂs Rule 403 ruling, and observing that evidence of the childÂs conduct in
other circumstances was of little relevance to the cogent question in the
trial, we likewise hold that the probative value of the evidence is outweighed
by the danger of unfair prejudice and that the trial court properly excluded it
under the balancing test of Rule 412. Â One
should comprehend that Rule 412 restricts certain evidence which might
otherwise be admissible; its exception from application to evidence Âthat is
constitutionally required to be admittedÂ[9] does
nothing to trump the admissibility standards of Rule 403 because both rules are
subject to the same Constitutional constraints. 

Â Â Â Â Â Â Â Â Â Â Â  The
United States Constitution provides, in part, Â[i]n all criminal prosecutions,
the accused shall enjoy the right . . . to be confronted with the witnesses
against him.Â Â U.S. Const. amend. VI. Â The Fourteenth Amendment to the United States
Constitution makes the right to confrontation applicable to the states. Â Pointer
v. Texas, 380 U.S. 400, 403 (1965). Â The
Confrontation Clause ensures Âthe reliability of the evidence against a
criminal defendant by subjecting it to rigorous testing in the context of an
adversary proceeding before the trier of fact.Â Â See
Maryland v. Craig, 497 U.S. 836, 845 (1990). Â Cross-examining an adverse party allows the
jury to assess a witnessÂs credibility and exposes facts which the jury may use
in its assessment. Â See Carroll v. State, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). 

Â Â Â Â Â Â Â Â Â Â Â  Each
Confrontation Clause issue must be weighed on a case-by-case basis, carefully
taking into account the defendantÂs right to cross-examine and the risk factors
associated with admission of the evidence. Â Hoyos v.
State, 951 S.W.2d 503, 510 (Tex. App.ÂHouston [14th Dist.] 1997), affÂd, 982 S.W.2d 419 (Tex. Crim. App. 1998).
Â In speaking of the interplay of the
Texas Rules of Evidence and the United States Constitution, the Texas Court of
Criminal Appeals has recently observed:

Generally, the right to present evidence and to
cross-examine witnesses under the Sixth Amendment does not conflict with the
corresponding rights under state evidentiary rules. Â Thus, most questions concerning
cross-examination may be resolved by looking to the Texas Rules of Evidence. Â In those rare situations in which the
applicable rule of evidence conflicts with a federal constitutional right, Rule
101(c) requires that the Constitution of the United States controls over the
evidentiary rule. Â Rule 101(c) also
states, ÂWhere possible, inconsistency is to be removed by reasonable
constructionÂ as well as by reasonable application of the rule. Â Thus, compliance with the reasonable
construction and application of a rule of evidence will, in most instances,
avoid a constitutional question.

Â 

Hammer v. State, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) (footnote
omitted).

Â Â Â Â Â Â Â Â Â Â Â  Even
though it does not recite such a restriction within its body, Rule 403 would be
subject to the same Constitutional considerations as Rule 412. Â Our analysis of the trial courtÂs application
of Rules 403 and 412 reflect that it was within the trial courtÂs discretion to
rule that the probative value of the excluded evidence was outweighed by the
danger of unfair prejudice and that admitting the evidence presented a valid
risk of jury confusion.Â  While the Sixth
Amendment protects an accusedÂs right to cross-examine witnesses, it does not
prevent a trial judge from limiting cross-examination on concerns about, among
other things, Âharassment, prejudice, confusion of the issues, the witnessÂ
safety, or interrogation that is repetitive or only marginally relevant.ÂÂ  Hammer,
296 S.W.3d at 561 & n.7 (quoting Delaware
v. Van Arsdall, 475 U.S. 673, 679 (1986)). Â Therefore, the trial court did not abuse its
discretion. 

Â Â Â Â Â Â Â Â Â Â Â  We
affirm the judgment of the trial court.

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Bailey
C. Moseley

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  March
19, 2010

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  May
7, 2010

Â 

Do Not Publish











[1]Although
Hubbard was originally charged by indictment with nine counts of aggravated
sexual assault of a child, two of those counts were dismissed at the instance
of the State.





Â 

[2]Tabitha
Fowl is the pseudonym used by the trial court to protect the childÂs privacy.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  





[3]The
video recorded interview is referenced outside the presence of the jury.Â  The recorded interview was not included in
the record on appeal, but it was entered in the trial court as a record exhibit
only. 





[4]The
defendant also sought, unsuccessfully, to have the childÂs statement admitted
through direct examination of the defendantÂs retained psychologist and the
child.





Â 

[5]The
Kesterson court also held that in the
event Ârule 412 was ever intended to classify sexual assault of a five year old
child as Âpast sexual behavior of a victim,Â the facts in [the Kesterson] case meet the exception of
412(b)(2)(E).ÂÂ  Kesterson, 997 S.W.2d at 295 n.4.

Â 





[6]Tex. R. Evid. 412(b)(3). 

Â 





[7]Rule
412(c) also requires an in camera proffer of evidence of prior sexual conduct
and a ruling on its admissibility before it can be introduced.Â  This procedure was meticulously followed by
the trial court. 

Â 





[8]The
balancing test of Rule 412(b)(3) provides that a victimÂs Âpast sexual behaviorÂ
is not admissible unless Âits probative value outweighs the danger of unfair
prejudice.Â Â The language of this test
differs from Rule 403, which provides relevant evidence may be excluded Âif its
probative value is substantially outweighed by the danger of unfair prejudice .
. . .Â

Â 





[9]Tex. R. Evid. 412(b)(2)(E).