Cecil Lenard FLETCHER, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–92–00412–CR.

Court of Appeals of Texas,
Dallas.

March 22, 1993.

John Hagler, Robert M. Rose, Dallas, for appellant.

Susan L. Free, McKinney, for appellee.

Before THOMAS, MALONEY and KAPLAN [1], JJ.

## OPINION

THOMAS, Justice.

Cecil Lenard Fletcher appeals his conviction for the offense of injury to a child. After returning a guilty verdict, the jury assessed punishment at four years' imprisonment, probated for four years. In three points of error, appellant complains that: (1) the evidence is insufficient to prove the offense as alleged in the indictment; (2) the State committed reversible error in referring to his post-arrest silence; and (3) the trial court erred in admitting testimony concerning the events that occurred at the time of his arrest. We overrule all points. Accordingly, we affirm the trial court's judgment.

## FACTUAL BACKGROUND

The victim is appellant's granddaughter who was three months of age at the time of the offense. The infant was living with her parents and was being cared for by Kerri Gordon, the mother's sister, who also was residing with the family. Gordon related the facts and circumstances which formed the basis of this complaint. Gordon was watching television as the baby sat in an infant seat,[2] on the floor, by her side. Someone knocked on the door and Gordon went to see who was there. Leaving the security chain attached, Gordon opened the door. Appellant forced the door open, "busting" the security chain and damaging a substantial portion of the door's facing.

As appellant entered the apartment, he began yelling and asking the whereabouts of his son, Keith.[3] Appellant immediately raised his fist and began hitting Gordon. A struggle ensued. Appellant forced Gordon against a railing by the staircase. Gordon fell across a chair and ultimately landed on a bed. As appellant was holding her down, Gordon managed to shove him away with her foot.

1. Justice Jeff Kaplan participated in this cause at the time it was submitted for decision. Justice Kaplan, however, did not participate in the issuance of this opinion.

2. The testimony and photographs demonstrated that the seat is a cloth bouncer/carrier that has some metal support structure.

3. Keith is also the infant's father.

As a result of this disturbance, the infant started crying. At this point, the baby was still sitting in the infant seat on the floor. After making additional derogatory comments about Keith, appellant walked over to the baby and kicked the back of the infant's seat. As a result of appellant's kick, the Velcro straps released and the baby was propelled forward. The infant fell to the floor where she landed on her face. Gordon grabbed the infant and ran out of the apartment.

The police and an ambulance were called. Gordon and the baby were treated at a local hospital. The baby suffered facial bruises, as well as contusions on her right leg and lower back. The medical testimony established that the injuries to the infant and Gordon were consistent with the events as reported by Gordon.

Appellant stated that he was upset and that he went to the apartment to talk to his son about a $5000 loan. Apparently, the loan was made by one of appellant's friends, without his knowledge. When Keith failed to repay the loan, the friend asked appellant to intercede on her behalf. According to appellant, he normally went by the apartment one to three times per week to see the baby. During the preceding few weeks, however, whenever appellant would go to the apartment, no one would answer the door. He said that he knew that they were inside because he could hear them. Appellant stated that the reason he was suddenly being denied access was because Keith discovered that he knew about the loan. On the day in question, he knocked and again no one answered. As he waited outside, appellant became more angry because he had arranged for the family to get into the apartment, and he was guaranteeing the rent. When the door was finally opened, he shoved his way through. Appellant admitted that he broke the security chain and damaged a portion of the door's molding. He stated that he immediately began yelling at Gordon and asked, "Where is that sorry S–B son of mine?" Appellant further admitted that he startled the baby and Gordon. According to appellant, Gordon immediately grabbed the baby and went out the door.

Appellant specifically denied that there was any type of altercation. Further, he stated that he loved his granddaughter and that he would never kick or hurt her in any manner. Appellant admitted, however, that he was very angry with Keith because this loan had not been repaid. Appellant characterized this as Keith having "stolen" $5000.

## SUFFICIENCY OF THE EVIDENCE

In the first point, appellant argues that there is insufficient evidence to support allegations in the indictment. Specifically, he asserts that the State failed to prove that he kicked the infant in the back.

### A. Standard of Review

In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim. App.1989). The trier of fact resolves questions concerning the credibility of witnesses and the weight to be given their testimony. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). The jury may believe or disbelieve all or any part of a witness's testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim. App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); *Smith v. State,* 789 S.W.2d 419, 420 (Tex.App.— Houston [1st Dist.] 1990, pet. ref'd).

### B. Application of the Facts to Law

■ In relevant part, the indictment alleges that appellant:

intentionally and knowingly engage[d] in conduct that caused bodily injury to Corey Fletcher, a child younger than fifteen (15) years of age by kicking Corey Fletcher *in the back* causing Corey Fletcher's face to strike the floor....

(Emphasis added.) Appellant asserts that the evidence showing he kicked the infant's seat does not constitute evidence that he kicked the baby in the back as alleged in the indictment. We disagree.

The record contains ample evidence that the infant sustained a blow to her back. Gordon testified that appellant kicked the seat in which the baby was sitting. The medical testimony established that the baby had injuries which were consistent with being kicked in the back, including a bruise to her lower back. Further, the treating physician described a bruise on the infant's face that was also consistent with her having landed on her face as a result of being kicked in the back.

We cannot accept appellant's hyper-technical distinction between directly kicking a child in the back and kicking an infant's back through a cloth carrier. In fact, we fail to see any difference in this situation and in a child sustaining a blow through its clothing. Were we to accept appellant's contention that there was no offense because of the interposition of a layer of fabric, a variety of senseless results would follow. *Compare with Resnick v. State*, 574 S.W.2d 558, 560 (Tex.Crim.App. [Panel Op.] 1978) (*touching* through clothing in the context of sexual contact is an offense); *Guia v. State*, 723 S.W.2d 763, 766 (Tex. App.—Dallas 1986, pet. ref'd) (interposition of layer of fabric does not prevent occurrence of sexual contact, for purposes of indecency with child); *see also Carroll v. State*, 698 S.W.2d 278, 279 (Tex.App.—Fort Worth 1985, pet. ref'd) (assertion of a variance because indictment stated that defendant hit child with his fist when evidence established that the hand was not clenched or doubled up was deemed to be hypercritical).

We conclude that there was sufficient evidence from which the jury could have found that the essential elements of the offense were proven beyond a reasonable doubt. Accordingly, we overrule the first point of error.

## COMMENT REGARDING POST–ARREST SILENCE

In his second point of error, appellant contends that reversible error occurred as a result of a question and answer that referred to his post-arrest silence. Appellant's objection was sustained and, upon request, the trial court instructed the jury to disregard the line of questioning. Appellant, however, argues that the court's instruction to disregard was inadequate to cure the error. The State first responds that no error was committed. Alternatively, the State argues that any error was cured by the trial court's subsequent actions. Although we are not persuaded that the complained-of conduct constituted a reference to appellant's post-arrest silence, the trial court, out of an abundance of caution, sustained the objection and gave an instruction to disregard. Therefore, we will review this point as if there was an allusion to appellant's post-arrest silence.

### A. Complained-of Conduct

Appellant's complaint arises out of the following colloquy:

[PROSECUTOR:] Detective, after arresting [Appellant], at any time, did he give you a statement?

[WITNESS:] Gave me a verbal statement.

[PROSECUTOR:] At the time that he gave you a verbal statement, had you given him his Miranda rights?

[WITNESS:] Yes, I did.

\* \* \* \* \* \*

[PROSECUTOR:] Did [Appellant] ever give you a written statement?

[WITNESS:] He did not.

[DEFENSE COUNSEL:] Judge, a man has a right not to make any statements and to bring up his failure to give a written statement steps all over his Fifth Amendment right. I am going to object.

[COURT:] Sustained.

[DEFENSE COUNSEL:] I would ask the jury to be instructed to disregard the question and answer about him not giving a written statement. It steps on the Fifth Amendment privilege. I am going to move for a mistrial.

Thereafter, the trial court denied the request for a mistrial. However, the trial court instructed the jury to disregard the the prosecutor's line of questioning.

## B. Applicable Law

■ In determining whether the trial court erred in denying the motion for mistrial, we are guided by the principles established in *Waldo v. State,* 746 S.W.2d 750, 752 (Tex.Crim.App.1988). In *Waldo,* a police detective, during the State's case-in-chief, alluded to appellant's post-arrest, post–*Miranda*[4] silence. 746 S.W.2d at 751. The detective was asked what he did when he and another officer decided to arrest appellant and another individual. The detective responded that the suspects were read their rights and asked *"if they have* [sic] *any statements to make, which there was no response." Waldo,* 746 S.W.2d at 752 (emphasis in original). The trial court gave an instruction to disregard but denied the motion for mistrial. *Waldo,* 746 S.W.2d at 752. The Court of Criminal Appeals held that the trial court did not err in failing to grant a mistrial. *Waldo,* 746 S.W.2d at 757.

In examining this issue, the *Waldo* court stated:

> [E]rror in admitting improper evidence may be generally corrected by a withdrawal and an instruction to disregard it except in extreme cases where it appears that the evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds.

*Waldo,* 746 S.W.2d at 752 (quoting *Harris v. State,* 375 S.W.2d 310, 311 (Tex.Crim. App.1964)). An instruction to disregard is effective unless consideration of the facts of the particular case suggests the impossibility of withdrawing the impression produced on the minds of the jury. *Waldo,* 746 S.W.2d at 754. In other words, the effectiveness of curative instructions is determined on a case-by-case basis. *See*

*Swallow v. State,* 829 S.W.2d 223, 227 (Tex. Crim.App.1992).

The *Waldo* court considered various factors in determining the efficacy of the curative instructions.[5] *Waldo,* 746 S.W.2d at 755–57. For the purposes of this opinion, we will utilize the same factors: the persistence of the State, the flagrancy of the comment, the particular instruction, the weight of the evidence, and the severity of the punishment.

## C. Application of Law to the Facts

### *Persistence of the Prosecution— Flagrancy*

■ At the time the complained-of conduct occurred, the jury knew that appellant had made oral statements to the officers. The fact that he did not give a written statement is not likely to have affected the jurors' deliberative process. We conclude that a juror would probably place less weight on this exchange than on the remarks at issue in *Waldo.*

Further, any harm was mitigated when the State made no further mention of the subject and did not try to pursue this line of questioning. The State did not attempt to capitalize on the matter by inviting harmful inferences to appellant's credibility during final argument or in later examination.

### *The Particular Instruction*

Following defense counsel's objection and request for a mistrial, the trial court stated:

> The request is denied. It is going to be assumed by the [c]ourt that the jury is going to follow the [c]ourt's instructions, not to consider that, and that line of questions. [Prosecutor], ask the next question.

Although not as assertive as might be desired, we conclude that the instruction and the trial court's comments were adequate to cure any error. We also note that

---

4. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. We note, however, that the court did not expressly adopt the factors as exhaustive or definitive. *Waldo,* 746 S.W.2d at 754.

defense counsel did not request a more emphatic instruction.

### Weight of the Evidence

In addition to the testimony previously outlined, defense counsel went into appellant's oral statements during cross-examination of the detective. On direct examination, appellant related in detail his comments to the police officers surrounding the alleged events. Because the jury knew that appellant made various oral statements to the officers, we conclude that this passing reference to his failure to provide a written statement did not negatively affect this proceeding.

### Severity of Punishment

The jury assessed punishment at four years' imprisonment, probated for four years. Considering the nature of the offense and the testimony previously outlined, we are unable to attribute the punishment in any measure to the question and answer relative to whether appellant provided a *written* statement to the police.

### Conclusion

Given these circumstances and the trial court's actions, we conclude that the complained-of question and answer was not so indelible "as to suggest the impossibility of withdrawing the impression produced on [the jury's] mind." *Swallow*, 829 S.W.2d at 227 (quoting *Waldo*, 746 S.W.2d at 752). Therefore, we hold that the trial court did not err in denying appellant's motion for mistrial. We overrule the second point of error.

### CIRCUMSTANCES OF APPELLANT'S ARREST

In the final point of error, appellant complains that the trial court erred in admitting testimony of the facts and circumstances surrounding his arrest. Appellant argues that the testimony was extremely prejudicial in that it was evidence of an extraneous offense that was not probative of any issue in the trial. The State responds that the circumstances of the arrest were relevant to the issue of appellant's state of mind at or near the time of the offense. Further, the State asserts it is always entitled to prove the circumstances surrounding an arrest, unless such evidence is inherently prejudicial and has no relevance to any issue in the case, citing this Court's opinion in *Rose v. State*, 724 S.W.2d 832, 834 (Tex.App.—Dallas 1986), *aff'd*, 752 S.W.2d 529 (Tex.Crim.App.1987). For the purposes of this opinion, we will assume that appellant has properly preserved the complaint as to certain portions of the evidence.

### A. Standard of Review

A trial judge has broad discretion in admitting or excluding evidence. Only when a trial court has abused its discretion should an appellate court conclude that the ruling was erroneous. *Montgomery v. State*, 810 S.W.2d 372, 390–91 (Tex.Crim. App.1991) (op. on reh'g); *compare also Cantrell v. State*, 731 S.W.2d 84, 90 (Tex. Crim.App.1987); *Templin v. State*, 711 S.W.2d 30, 33 (Tex.Crim.App.1986).

### B. Admissibility of Evidence Under the Texas Rules of Criminal Evidence

 Before evidence is admissible, it must be *relevant* as defined by rule 401.[6] Evidence is *relevant* if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Rule 401; *Montgomery*, 810 S.W.2d at 386; *see also Mayes v. State*, 816 S.W.2d 79, 84 (Tex.Crim.App. 1991) (relevant evidence is any evidence which influences facts that have something to do with the ultimate determination of guilt or innocence in a particular case). In determining relevancy, the courts look at the purpose for offering the evidence and whether there is a direct or logical connection between the offered evidence and the proposition to be proved. So long as there

---

**6.** All references to rules are to the Texas Rules of Criminal Evidence unless otherwise indicated.

is any reasonable logical nexus, the evidence will pass the relevancy test. *See* rule 401; H. WENDORF, D. SCHLUETER & R. BARTON, TEXAS RULES OF EVIDENCE MANUAL: CIVIL AND CRIMINAL Article IV, at IV-3, 4 (3d ed. 1991) (hereafter WENDORF ET AL.).

Rule 404 prohibits the circumstantial use of character evidence. *See* rule 404(a); *Montgomery*, 810 S.W.2d at 386. Rule 404 also prohibits the admission of evidence of other crimes, wrongs, or acts "to prove the character of a person in order to show that he acted in conformity therewith." Rule 404(b); *Montgomery*, 810 S.W.2d at 386. This type of evidence, however, may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Rule 404(b); *Montgomery*, 810 S.W.2d at 387. Further, the *purposes* designated in rule 404(b) are "neither mutually exclusive nor collectively exhaustive." *Montgomery*, 810 S.W.2d at 388; *see also Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Crim.App.1972).

■ Assuming that the evidence is relevant under rule 404(b), it is necessary to determine whether the probative value is *substantially outweighed* by the specifically identified dangers enumerated in rule 403. *See* rule 403. In making this determination, the trial court must: (1) identify the probative value; (2) identify the prejudicial danger(s); and (3) weigh one against the other. Under rule 403, admissibility of relevant evidence is favored, and there is a presumption that relevant evidence is more probative than prejudicial. *Montgomery*, 810 S.W.2d at 389. Once a rule 403 objection has been raised, the trial court has no discretion as to whether or not to engage in the balancing process. *Montgomery*, 810 S.W.2d at 389.

■Appellant complains that the probative value of the evidence is substantially outweighed by its prejudicial nature. Almost any relevant evidence offered by one side is going to be prejudicial to the opposing party. Therefore, only *unfair* prejudice provides the basis for excluding relevant evidence. WENDORF ET AL., *supra*, at IV-20; *see* rule 403 ("unfair prejudice").

In our review of the trial court's balancing-test determination, this Court must first determine if the evidence caused the jury to draw an impermissible character-conformity inference or if it otherwise distracts the jury from the charged offense and invites it to convict on a moral or emotional basis rather than as a reasoned response to the relevant evidence. Next, this Court must determine the State's need for the evidence. *Montgomery*, 810 S.W.2d at 395.

## C. Complained-of Testimony

■ Appellant specifically complains of the introduction of the following testimony:[7]

[Prosecutor:] After obtaining an arrest warrant, again, would you tell the jury what happened when you went to [Appellant's] residence?

[Witness:] Went to his residence and myself and Detective Billy Meeks, we had on jackets that said Police, in large white lettering across it. As we went up to the stairs, we got to the side of the door and we yelled, police. [Appellant] came up to the door and put his hand up in a fighting stance and we rushed into the apartment and he began struggling with us.

## D. Application of Law to the Facts

The jury had to determine what occurred at the apartment on the date in question. The issue was whether appellant kicked his infant granddaughter in the back causing the reported injuries. The only people who could tell the jury what happened were appellant and Gordon. From the beginning, appellant's defensive theory was that this entire episode was fabricated and initiated by his son because of the "bad blood"

---

7. Appellant also complains in his brief about the detective's testimony concerning the fact that he had alcohol on his breath. We note, however, that this evidence as well as the remainder of detective's testimony concerning appellant's ac-tions, anger, and statements at the time of the arrest were admitted without objection. Thus, appellant has waived any complaint to these particular areas of testimony. *See* rule 103(a)(1).

between them. Throughout the cross-examination of Gordon, the thrust of the questions was an attempt to get the jury to disbelieve her version of the events. Gordon's credibility was attacked through extensive cross-examination about her prior drug and alcohol abuse, as well as her failure to attend school. In addition, defense counsel pointed out each and every conceivable inconsistency between the various police and medical reports. Appellant's attempt to discredit the State's main witness is further demonstrated by the fact that defense counsel at one point even focused on Gordon's use of birth control pills at the age of sixteen. The questions that were asked of the medical personnel demonstrated an attempt to get the jury to infer that the injuries to Gordon had been self-inflicted and that those to the child had been inflicted by Keith and his wife.

During most of appellant's direct examination, he focused on Keith's drug use and all of the troubles between them for the preceding fourteen-year period. Appellant's defensive theory is further evidenced by the fact that almost his entire jury argument during the guilt/innocence stage focused upon the deplorable living conditions that existed in this house. Defense counsel stressed the fact that Keith and his friends were dopers and liars looking for a way to get appellant out of the way.

We also note that the underlying charge was an assaultive offense. Appellant's immediate resistance towards the arresting officers indicated an aggressive manner that was consistent with his earlier actions toward Gordon. Based upon the nature of the underlying offense and appellant's defensive theory, we conclude that the evidence that he immediately assumed "a fighting stance" when the officers arrived was probative of his state of mind "at or near" the time of the event. Therefore, we conclude that the complained-of testimony was relevant.[8]

We must now determine whether its probative value was substantially outweighed by the possibility of unfair prejudice. Based upon all of the evidence outlined, we conclude that the evidence did not cause the jury to draw an impermissible character-conformity inference or invite it to convict on a moral or emotional basis. Therefore, the trial court did not abuse its discretion in allowing its admission. The third point is overruled.

We affirm the trial court's judgment.

---

8. Because we conclude that the evidence was relevant to appellant's state of mind, it is not necessary for us to discuss the State's argument that the circumstances of an arrest are almost always admissible.