COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-285-CR

ISAUL REYNA APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

In three points, Isaul Reyna asserts ineffective assistance of counsel during his trial and subsequent conviction for engaging in organized crime, and in a fourth point asserts error on the part of the trial court in admitting certain jailhouse correspondence written by him.  We affirm.

II.  Background

This is the case of the shootout after the OK Corral.  The evening following Christmas 2003, three young people went to the OK Corral Dance Club.  As they left to return home around 12:00 a.m., Eric Campa was driving, Christina Cigala was in the passenger seat, and Raul Ataide sat in the middle of the front seat.  As they drove down Hemphill Street, the occupants of a grey or silver Alero fired shots at their car, and a shotgun blast struck Cigala in the head.  Campa drove to Cigala’s house and called 911.  By the time help arrived, Cigala was no longer breathing.  Ataide later testified that there were no words or signs exchanged between the occupants of their car and the grey car, and no one in their vehicle had fired a firearm—all of the shots came from the grey car.

Officer Weldon Thompson observed that at least four shots were fired into the pickup driven by Campa—three small caliber bullet holes in the passenger door and a large hole in the passenger window.  He recovered a shot cup from a shotgun shell on the ground next to the truck where it apparently  had fallen when Cigala was removed from the passenger seat.  He also recovered three “projectiles” from the vehicle that were CCI brand .25 caliber bullets, all coming from the same .25 automatic pistol.  He also located a shotgun cap and a .25 caliber shell casing from the scene of the shooting in the 3600 block of Hemphill.  A .25 caliber shell casing was located under the driver’s seat that came from the same pistol as the shell casing found at the scene of the shooting.

A Crime Stoppers tip led the police to investigate Reyna, who had been issued a traffic ticket driving a gray Alero and who was accompanied by Erika Cerda.  The police subsequently located the vehicle, obtained a search warrant, contacted Cerda (who owned the Alero), and took Cerda’s statement that implicated two additional suspects in the shooting. 

According to Cerda, on the evening of the shooting, she went to the home of Luis Gongora, after which she, Reyna, Gongora, Richard Maldonado, and another individual known as “Fino” drove to the Riverside neighborhood in her Alero.  Following a disagreement between Maldonado and Fino, the group dropped off Fino and returned to Gongora’s home.  Maldonado, who was still unhappy with Fino, said he was going to “smoke” Fino, which means shoot him, and asked Gongora, “Where are the rounds?”  Cerda saw Maldonado with a box of shotgun shells and then went upstairs and fell asleep at Gongora’s house, awakening around 1:30 a.m. to find that Reyna, Gongora, Maldonado, and her car were gone.  They returned around 3:00 a.m.   

An executed search warrant of Gongora’s house yielded, in part, two boxes of 12-gauge shotgun shells containing No. 7.5 birdshot, the same approximate size shot (No. 7.5 or No. 8) removed from Cigala’s body.  Also recovered were 12-gauge shotgun shells that contained shot cups consistent with the brand and size of the shot cup that Officer Thompson found beside Campa’s pickup.  The police did not discover any .25 caliber ammunition or shell casings. 

Dylan Griffith, a gang member, testified that three days after the shooting, Reyna and Gongora came to his house driving a silver car and told him that they had “shot at some rats,” meaning members of a certain rival gang, on the south side.  According to Griffith, Reyna said that after a female in a pickup truck exchanged gang signs with them, they stopped their car and retrieved a shotgun from the trunk.  Reyna then drove with Gongora in the passenger seat and Maldonado in the back, and they pulled up beside the pickup and shot at it.  Griffith was shown the shotgun but refused to keep it and was also told that Reyna was driving his girlfriend’s car at the time of the shooting, which was the same silver car Reyna drove to Griffith’s home.  He also testified that he saw the shotgun again at the home of another gang member where Gongora and Reyna had taken it. 

Yolanda Martinez testified that she received a late night phone call from Reyna in December of 2003 asking that she come pick him up along with Gongora and Maldonado because they had killed someone the night before.  She refused.  Reyna subsequently told her that on the way to a drive-by, they had “got into it with another gang and . . . [a] girl throwing up gang signs to [them].”  Gongora had told him to “roll up” on them, and Gongora and Maldonado did the shooting.  At trial, there was also extensive evidence that Reyna, Gongora, and Maldonado were gang members and testimony that Cigala had a family member in a rival gang.

A jury convicted Reyna of engaging in organized crime as a member of a criminal street gang, sentenced him to life in prison, and assessed a fine of $10,000.

III. Ineffective Assistance of Counsel

In his first three points, Reyna asserts that his trial counsel was ineffective (1) by failing to have the voir dire examination recorded; (2) by failing to move to suppress the fruits of the search of the Alero; and (3) through the “cumulative effect” of trial counsel’s errors.

A. Standard of Review

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his 
counsel’s representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel’s deficiency, the result of the trial would have been different.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Salinas v. State
, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); 
Mallett v. State
, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001); 
Thompson
 
v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). 

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel’s assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
See Strickland
, 466 U.S. at 688-89, 104 S. Ct. at 2065.  Review of counsel’s representation is highly deferential, and the reviewing court indulges a strong presumption that counsel’s conduct fell within a wide range of reasonable representation.  
Salinas
, 163 S.W.3d at 740; 
Mallett
, 65 S.W.3d at 63.  A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim.  
Thompson
, 9 S.W.3d at 813-14.  “In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel’s actions.”  
Salinas
, 163 S.W.3d at 740 (quoting 
Mallett
, 65 S.W.3d at 63).  To overcome the presumption of reasonable professional assistance, “any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.”  
Salinas
, 163 S.W.3d at 740 (quoting 
Thompson
, 9 S.W.3d at 813).

The second prong of 
Strickland
 requires a showing that counsel’s errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable.  
Strickland, 
466 U.S. at 687, 104 S. Ct. at 2064.  In other words, appellant must show there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.  
Id.
 at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  
Id.
  The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.  
Id.
 at 697, 104 S. Ct. at 2070.

An appellant claiming ineffective assistance of counsel at trial must identify the allegedly erroneous acts and omissions of counsel.  
Strickland
, 466 U.S. at 690, 104 S. Ct. at 2066.  The appellate court then determines whether, in light of all the circumstances, these identified acts or omissions were outside the wide range of competent assistance.  
Id.

To determine whether trial counsel was ineffective, counsel’s performance is judged under the law which existed at the time of trial.  
Ex parte Akhtab
, 901 S.W.2d 488, 490 (Tex. Crim. App. 1995).  In contrast, the prejudice prong is determined under current law.  
Ex parte Butler
, 884 S.W.2d 782, 784 (Tex. Crim. App. 1994)

B.  Application—Ineffective Assistance of Counsel

1.
  
Lack of Recorded Voir Dire

Why counsel failed to request a record of voir dire does not appear in the record, and hence
 
the first leg of the 
Strickland
 ladder collapses.
(footnote: 2)  Further, while Reyna postulates that the failure to record voir dire prevented an appeal regarding any 
Batson
 challenges, he presents us with no evidence that any 
Batson
 violation occurred, let alone one warranting a successful appeal.  Without showing some identifiable error resulting from the absence of the record, the second leg of the 
Strickland
 ladder also fails along with his attempt to scale the 
Strickland
 ladder.

2.  Failure to File a Motion to Suppress

It is axiomatic that Reyna must have standing to file a motion to suppress, that is, that his privacy rights were violated.  
See
 
State v. Klima
, 934 S.W.2d 109, 111 (Tex. Crim. App. 1996).  Reyna asserts that the shell casing found during the search of Cerda’s car should have been the object of such a motion.  Under the circumstances at issue, standing could be conferred on Reyna if he was the car’s owner, if it was occupied by him when it was searched, if he and Cerda were married at the time of the search, if he had permission from the owner to drive the vehicle, if he had a legal right over the vehicle, or even if he had permission from a non-owner who was authorized to permit him use of the vehicle.  
See Parker v. State
, 182 S.W.3d 923, 927 (Tex. Crim. App. 2006).  There is no evidence in the record of the foregoing. 
 In fact, the trial court determined that Reyna and Cerda did not have a common law marriage.  Accordingly, we hold that Reyna had no standing to contest the search of Cerda’s car.  Therefore, Reyna cannot establish that his counsel’s decision not to file the motion to suppress was erroneous.

3.  Cumulative Error

Because we have found no error regarding voir dire or the failure to file a motion to suppress, there is no error to accumulate.  

We overrule Reyna’s first three points.  

IV.  Jail House Correspondence

Reyna’s fourth point contends that the trial court erred by admitting certain irrelevant jail house correspondence from Reyna over his objection.  The correspondence consists of two pages of writing and a one-page drawing of a topless woman and was written by Reyna and sent to Luis Gongora.

Specifically, Reyna’s attorney’s objection was as follows:  

Judge, this is a jailhouse letter.  It contains some artwork which I would say is not relevant to this case.  It also contains a bunch of expletives and a bunch of screwed up language that doesn’t prove anything that they haven’t already proved elsewhere, so its probative value is very low and its prejudicial effect is very high. 

As pointed out by Reyna, the trial court is given broad discretion in determining preliminary questions regarding the admissibility of evidence.  
Butler v. State
, 936 S.W.2d 453, 458 (Tex. App.—Houston [14th
 Dist.] 1996, pet. ref’d).  There must be a “direct or logical connection between the offered evidence and the proposition to be proved.  So long as there is any reasonable logical nexus, the evidence will pass the relevancy test.”  
Id.
 (citing 
Fletcher v. State
, 852 S.W.2d 271, 276-77 (Tex. App.—Dallas 1993, pet. ref’d)).

Also, as pointed out by the State, the appellate court reviews a trial court’s admission or exclusion of evidence under an abuse of discretion standard.  
Burden v. State
, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001); 
Rankin v. State
, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996) (op. on reh’g); 
Montgomery v. State
, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).  Only if the court’s decision falls outside the zone of reasonable disagreement, has it abused its discretion.  
Rankin
, 974 S.W.2d at 718; 
Montgomery
, 810 S.W.2d at 391.

We first observe that the objection points with specificity of any sort only to the irrelevant “artwork” and to a “bunch of expletives” and invokes a Rule 403 objection that the prejudicial effect of the correspondence is outweighed by its probative value.  Bearing in mind that the State’s theory in the case was that the shooting was gang related, recalling that there was testimony that the deceased flashed gang signs to the shooter’s car before she was shot, and noting that the correspondence, even including the “artwork” page, is replete with gang references, we cannot say that the trial court abused its discretion by admitting the correspondence over the relevance objection.  Furthermore, even Reyna conceded that the letter’s contents did not prove anything beyond that which the State had already proven; accordingly, any prejudice stemming from the language in the correspondence was minimal because the jury was already well aware of Reyna’s alleged gang affiliations through testimony of numerous witnesses and other evidence.  Accordingly, we cannot say that the probative value of this letter was outweighed by the potential for prejudice.  

Further, even if error had occurred in its admission, it was most assuredly harmless.  The appropriate standard of harm for the wrongful admission of unfairly prejudicial evidence is found in Texas Rule of Appellate Procedure 44.2(b).  
Reese v. State,
 33 S.W.3d 238, 243 (Tex. Crim. App. 2000).  Because the error complained of involves non-constitutional error, it is to be disregarded unless it affected Reyna’s “substantial rights.”  
Tex. R. App. P.
 44.2(b).

A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury’s verdict.  
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).  The conviction is to be affirmed if, after examining the record as a whole, the court is left with fair assurance that the error did not influence the jury or influenced the jury only slightly.  
Solomon v. State
, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).  In assessing the likelihood that the jury’s decision was adversely affected by the error, the court is to consider everything in the record, including any testimony or physical evidence admitted, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case.  
Motilla v. State
, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  The court may also consider the jury instructions, the State’s theory, and any defensive theories, closing arguments, and even voir dire, if applicable.  
Id
.

Following an examination of the entire record, we hold that the correspondence could not possibly have had a substantial or injurious effect or influence on the jury’s verdict and was clearly harmless.  We overrule Reyna’s fourth point.

V.  Conclusion

Having overruled all four of Reyna’s points, we affirm the judgment of the trial court.

PER CURIAM

PANEL F: MCCOY, J.; CAYCE, C.J.; and LIVINGSTON, J.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: September 7, 2006

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
See, e.g., Whitney v. State
, 190 S.W.3d 786, 788 (Tex. App.—Fort Worth 2006, no pet.) (“Here, there is no record of the proceedings against Whitney, and Whitney failed to file and secure a hearing on a motion for new trial.  The record is silent regarding why Whitney’s trial counsel failed to request a record . . . .  Thus, we hold that Whitney failed to meet the first prong of
 Strickland
.”)